**E-Filed 2/10/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CREATIVE SCIENCE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOREX CAPITAL MARKETS, LLC, et al., <br><br> Defendants. | Case Number C 04-03746 JF (RS) <br><br> ORDER[1] GRANTING MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS <br><br> [Docket No. 95] |

**I. BACKGROUND**

Plaintiff Creative Science Systems, Inc. ("CSS") is a software company that develops and markets NetZyme Enterprise software ("NetZyme"), among other software products. NetZyme is a type of "middleware," a category of software that facilitates communication between multiple software applications or hardware. Defendant Forex Capital Markets, LLC ("FXCM") is an electronic foreign currency broker that licensed NetZyme from CSS.

On September 7, 2004, CSS filed its original complaint in the instant action against

---

[1] This disposition is not designated for publication and may not be cited.

Defendants FXCM and Refco Group, Ltd. LLC ("Refco").[2] On September 23, 2004, CSS filed its First Amended Complaint, alleging: (1) copyright infringement in violation of the Copyright Act, (2) false designation of origin under section 43(a) of the Lanham Act, (3) misappropriation under California common law, and (4) breach of implied-in-fact contract. CSS alleges generally that FXCM copied or Netzyme, installed it on more servers than were authorized, and failed to make certain payments.

On November 22, 2004, FXCM filed an Answer and Counterclaim against CSS, asserting the following counterclaims: (1) breach of contract, (2) breach of warranty, (3) false advertising under section 43(a) of the Lanham Act, (4) false advertising under the California Business and Professional Code § 17500, and (5) unjust enrichment. FXCM alleges generally that CSS misrepresented to FXCM that NetZyme would be able to support 50,000 simultaneous users, and that NetZyme was never able to perform as was promised.

During discovery, in March, 2005, FXCM requested from CSS "all documents relating to the number of concurrent client-server sessions that could be supported by NetZyme, including documents relating to any tests of such capabilities," and all such documents and tests relating to "the number of simultaneous users who could be supported by NetZyme." Bovich Decl., Ex. A, Nos. 9 and 10. FXCM renewed this request in November, 2005. *Id.*, Ex. C. CSS produced the requested documents at the end of November, 2005, approximately one month prior to the December 16, 2005 lay discovery deadline.[3] *Id.*, Ex. F. These documents included a report describing a test program—"sessionloadtest.java"—which was used to test the performance of NetZyme in September 2002, during the parties' negotiations and prior to the execution of the licensing agreement. This program arguably shows that CSS was aware at the time that NetZyme could not sustain as many simultaneous users as CSS had represented to FXCM. *Id.*, Ex. E.

On January 12, 2006, FXCM requested that CSS stipulate to FXCM's proposed filing of

---

[2] On December 14, 2005, Refco filed notice with the Court of an automatic stay of the proceedings with respect to Refco because it had filed for Chapter 11 bankruptcy.

[3] The lay discovery deadline had previously been November 18, 2005, but was extended by approximately one month in early November, 2005.

Case No. C 04-03746 JF (RS)
ORDER GRANTING MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS
(JFLC1)

its First Amended Answer and Counterclaims, which request CSS refused. *Id*., Exs. G and H. On January 25, 2006, FXCM filed the instant motion for leave to file its First Amended Answer and Counterclaims. FXCM seeks to add counterclaims alleging: (1) deceit, (2) suppression of fact, (3) promise made without intention to perform, and (4) negligent misrepresentation. FXCM's First Amended Answer and Counterclaims also include an additional affirmative defense of "unclean hands" and additional factual allegations relating to the new counterclaims and affirmative defense. CSS has filed opposition to the motion. The Court heard oral argument on February 10, 2006.

## II. DISCUSSION

The request for leave to amend is governed by Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires." In deciding whether to grant leave to amend, the Court will consider several factors, including: (1) undue delay by the party seeking the amendment; (2) prejudice to the opposing party; (3) bad faith; (4) futility of amendment; and (5) whether the party previously has amended its pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court has discretion in decided whether to grant leave to amend, but it "'must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)).

CSS argues that FXCM's additional counterclaims are based on two separate categories of factual allegations: the "50,000 concurrent user" theory and the "24x7 reliability" theory. These two theories are related. The factual allegations relating to the 24x7 reliability theory include:

> In addition, Dreyband promised that NetZyme could provide "24x7 reliability," with knowledge that NetZyme's ability to provide such reliability would be greatly impacted by the above performance issues.
>
> FXCM is now aware that the representations made by Creative Science were in fact false. The true facts were that NetZyme could not sustain 50,000 concurrent client-server sessions per CPU in the manner represented by Creative Science and relied upon by FXCM, and (2) that NetZyme could not provide "24x7 reliability."

3

1   Bovich Decl., Ex. G, ¶¶ 112-13.  Although the "24x7 reliability theory" was not identified as
2   such in earlier pleadings, and may expand the scope of the counterclaims, the new factual
3   allegations relate directly to FXCM's the general allegation that CSS *knew* during contract
4   negotiations that it was making false promises.  All of the new factual allegations and
5   counterclaims allegedly arise from the recently discovered sessionloadtest.java program, which
6   may demonstrate knowledge of significant performance limitations.  Additionally, CSS argues
7   that FXCM neither identifies the basis for its additional affirmative defense of "unclean hands"
8   nor explains why it could not have been asserted earlier.  FXCM responds that this defense is
9   based on the same factual allegations underlying the additional counterclaims: that CSS
10  knowingly defrauded FXCM during contract negotiations.  Accordingly, for the purpose of the
11  instant motion, the Court will evaluate together the two theories and the additional affirmative
12  defense.
13       CSS opposes FXCM's motion on the ground that the proposed additions would change
14  significantly the theory underlying FXCM's counterclaims.  CSS identifies as FXCM's primary
15  ground for the instant motion the allegation by FXCM that the recent document discovery
16  revealed, for the first time, that CSS interpreted the term "50,000 concurrent client-server
17  sessions" differently than "50,000 concurrent users."  CSS disputes that this was the first time
18  that FXCM was aware of this critical distinction.  CSS has submitted deposition testimony of
19  Yuri Miroshnikov, FXCM's Chief Technology Officer, indicating that he understood the
20  distinction between a "connection" and a "session."  Frewing Decl., pp. 262-64.  However,
21  FXCM responds that its new allegations, counterclaims, and affirmative defense are based on
22  more than the distinction between these two terms.  FXCM argues that it is immaterial which
23  term is used, as NetZyme did not support anything close to 50,000 concurrent users *or* client-
24  server sessions.  Bovich Decl., Ex. E ¶ 54.  Additionally, FXCM argues that CSS did not reveal
25  to FXCM the disclaimers or limitations of the sessionloadtest.java program, which arguably are
26  material to the performance of the software.  *Id*., ¶ 43.  Accordingly, the allegations that FXCM
27  knew of the distinction between the relevant terms is not enough to show that FXCM's additional
28  counterclaims and affirmative defense are futile or that it has acted in bad faith or unduly delayed

the filing of the instant motion.

CSS argues that it will be prejudiced if the Court grants the instant motion because it would cause CSS to incur additional expenses, discovery is closed, and the March 3, 2006 deadline for filing summary judgment motions is approaching. FXCM represents that additional discovery and modification of the current schedule is not necessary, but that it is amenable to reopening discovery for both parties for the limited purpose of conducting discovery related to the amendments to the pleadings. As the Court advised counsel at the February 10, 2006 hearing, the Court's schedule necessitates a delay of the presently scheduled trial date by at least 45 to 60 days, which would accommodate any additional discovery that would be required by granting the instant motion. Accordingly, given the very liberal standard for motions for leave to amend and the absence of notable prejudice to CSS, the Court will grant the instant motion.

However, it is not entirely clear whether FXCM first learned of the sessionloadtest.java program, upon which it bases all of its new allegations and claims, as a result of the November, 2005 document discovery. Yakov Dreyband, co-founder, Chief Operating Officer, and primary software architect of CSS, stated in his declaration that he demonstrated the sessionloadtest.java program for FXCM personnel during a December 2002 training session, and left a copy of this program on a FXCM computer. Dreyband Decl., ¶¶ 11(c), 12. In its reply brief, FXCM ignores this allegation, and argues incorrectly that "CSS does not contend that it ever revealed the disclaimers or limitations contained in SessionLoadTest.java to anyone at FXCM." Because of the liberal standard for motions for leave to amend, CSS's own delayed production of the sessionloadtest.java program, and the inconclusive evidence regarding whether FXCM in fact had possession of the test at the earlier date, the Court will grant the instant motion. However, based on these concerns and the representation of counsel at the February 10, 2006 hearing that further discovery would financially burden CSS, FXCM shall produce its witness(es) for deposition in California.

### III. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the instant motion for leave to amend answer and counterclaims is GRANTED.

The current pre-trial and trial schedule is vacated. The new trial date is June 16, 2006. The new last date to hear dispositive motions is May 26, 2006. All other dates are 45 dates later than the dates to which parties stipulated in the December 22, 2005 Order.

IT IS SO ORDERED

DATED: February 10, 2006

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

2  John P. Bovich            jbovich@reedsmith.com, edorrington@reedsmith.com

3  Robert T. Cruzen          rcruzen@howardrice.com,

4  Scott H. Frewing          scott.h.frewing@bakernet.com, diane.e.pierson@bakernet.com; renata.thorgersen@bakernet.com; fsay@bakernet.com

5

   Tod L. Gamlen             tod.l.gamlen@bakernet.com, frances.m.say@bakernet.com; renata.m.thorgersen@bakernet.com
6

7  Martin R. Glick           mglick@howardrice.com,

8  Jonah D. Mitchell         jmitchell@reedsmith.com, Drothschild@reedsmith.com

9  William R. Overend        woverend@reedsmith.com, nctuttle@reedsmith.com

10 Maxim H. Waldbaum         mwaldbaum@schiffhardin.com, jsanchez@schiffhardin.com

11 Keith L. Wurster          keith.l.wurster@bakernet.com, robin.m.robledo@bakernet.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28