**E-Filed 4/4/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CREATIVE SCIENCE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOREX CAPITAL MARKETS, LLC, et al., <br><br> Defendants. | Case Number C 04-03746 JF (RS) <br><br> ORDER[1] GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS <br><br> [re: docket no. 95] |

## I. BACKGROUND

Plaintiff Creative Science Systems, Inc. ("CSS") is a software company that develops and markets NetZyme Enterprise software ("NetZyme"), among other software products. NetZyme is a type of "middleware," a category of software that facilitates communication between multiple software applications or hardware. Defendant Forex Capital Markets, LLC ("FXCM") is an electronic foreign currency broker that licensed NetZyme from CSS.

---

[1] This disposition is not designated for publication and may not be cited.

On September 7, 2004, CSS filed its original complaint in the instant action against Defendants FXCM and Refco Group, Ltd. LLC ("Refco").[2] On September 23, 2004, CSS filed its First Amended Complaint, alleging: (1) copyright infringement in violation of the Copyright Act, (2) false designation of origin under section 43(a) of the Lanham Act, (3) misappropriation under California common law, and (4) breach of implied-in-fact contract. CSS alleges generally that FXCM copied Netzyme, installed it on more servers than were authorized, and failed to make certain payments.

On November 22, 2004, FXCM filed an answer and counterclaim against CSS, asserting the following counterclaims: (1) breach of contract, (2) breach of warranty, (3) false advertising under section 43(a) of the Lanham Act, (4) false advertising under the California Business and Professional Code § 17500, and (5) unjust enrichment. On February 10, 2006, this Court issued an order granting FXCM's motion for leave to amend answer and counterclaims, adding counterclaims alleging: (1) deceit, (2) suppression of fact, (3) promise made without intention to perform, and (4) negligent misrepresentation. FXCM alleges generally that CSS misrepresented to FXCM that NetZyme would be able to support 50,000 simultaneous users, and that NetZyme never was able to perform as was promised.

On September 10, 2004,[3] this Court issued an "Order Preserving Evidence and Shortening Time for Discovery" ("Preservation Order"), as follows:

> FXCM and Refco shall preserve all relevant documents as defined under Federal Rule of Civil Procedure 34(a), including but not limited to all electronic evidence or evidence stored on computers regardless of the medium on which it is stored. This Order applies to and includes, but is not limited to: (1) all copies of NetZyme® Enterprise or portions thereof; (2) any configuration file on any load balancing server used by FXCM, including but not limited to the "Big IP" server used by FXCM; and (3) all evidence of distribution of FXCM and/or Refco client software, including but not limited to any FXCM customer database.
> For purposes of this Order, "preserve" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and

---

[2] On December 14, 2005, Refco filed notice with the Court of an automatic stay of the proceedings with respect to Refco because it had filed for Chapter 11 bankruptcy.

[3] The Preservation Order was signed on September 10, 2004, but was not filed electronically until September 13, 2004. Both parties agree that they received the order on September 10, 2004.

> tangible things including all documents as defined above and those that are reasonably anticipated to be subject to discovery under Federal Rules of Civil Procedure 26 or 34 in this action. To preserve includes taking steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, erasing, wiping, relocation, migration, theft or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

On February 24, 2006, CSS filed the instant motion for sanctions, claiming that FXCM did not comply with the Preservation Order. CSS seeks monetary sanctions and:

> An order directing the jury in this matter that it should (i) infer that FXCM installed the software program NetZyme on 45 additional computers, because FXCM reinstalled operating systems upon some or all of those computers after the Court's September 10, 2005 Order Preserving Evidence and Shortening Time for Discovery; and (ii) that FXCM is barred from presenting a particular defense *or* that the jury should further infer that FXCM's computers onto which it had installed NetZyme were used to support FXCM customers

FXCM opposes the motion. The Court heard oral argument on March 31, 2006.

On Friday, September 10, 2004, Scott H. Frewing ("Frewing"), counsel for CSS, sent an e-mail to David Sassoon ("Sassoon"), General Counsel for FXCM, in which he noted that he and Sassoon had discussed the Preservation Order on the telephone. Declaration of Scott H. Frewing in Support of Plaintiff Creative Science Systems, Inc.'s Motion for Sanctions for Failure to Preserve Evidence ("Frewing Decl."), Ex. 4. A copy of the order was attached to the e-mail. *Id*. Frewing's e-mail, sent from California, is time-stamped at 12:45 pm. *Id*. While the e-mail does not indicate the time zone, FXCM states—and CSS has not indicated otherwise—that the e-mail was sent at 3:45 pm New York time. Opposition, p. 7. Additionally, the e-mail indicates that Frewing first informed Sassoon of the filing of the instant action during the September 10, 2004 telephone conversation. Frewing Decl., Ex. 4.

On September 13, 2004, Frewing sent a letter to Sassoon describing a second telephone conversation with Sassoon on that date. Frewing Decl., ¶¶ 9-10, Ex. 5. Frewing wrote that they had discussed scheduling an inspection of FXCM's computers for September 15 and 16, but that Sassoon and others would not be available because of Rosh Hashana. *Id*., Ex. 5. Instead, the inspection was scheduled for September 20, 2004. *Id*. Sassoon declined Frewing's request to "acknowledge in writing that all FXCM employees had been advised of the Court's Order, and that FXCM had taken required steps such as preserving all existing back-up media such that the

back-up media would not be re-used or erased." *Id*.

CSS points to evidence indicating that several high level employees of FXCM received little or no guidance related to the Preservation Order. Brandon Palmer ("Palmer"), FXCM's Director of Information Technology, has testified that the only step he took in response to the Preservation Order was informing the approximately six to eight people who worked for him at the time. Frewing Decl. ¶ 24, Ex. 9 pp. 313-14. Sassoon did not give Palmer "any significant explanation of the court order beyond what the court order literally said." *Id*., pp. 316-17. William Ahdout ("Ahdout"), described by Frewing as a partner at FXCM who oversees the FXCM trading room, has testified that he was never told of the Preservation Order. Frewing Decl. ¶ 25, Ex. 15 p. 161. Kenneth Grossman ("Grossman"), who was Chief Financial Officer of FXCM until September, 2005, has testified that he did not remember having conversations with anyone other than Sassoon regarding compliance with the Preservation Order. Frewing Decl. ¶ 26, Ex. 16 p. 66.

In opposition to the instant motion for sanctions, FXCM argues that while it did reinstall the Linux operating system on a number of servers, it did so as part of a program to test new middleware. FXCM alleges that because NetZyme did not perform as well as had been promised, it asked CSS in April, 2004 to cure its breach of contract. First Amended Answer and Counterclaims ("FAAC"), ¶ 137. FXCM argues that CSS "purported to terminate the Software License Agreement" in response to this request to cure. *Id*., ¶ 138. During that same month, FXCM decided to use Fiorano software rather than NetZyme. Declaration of Yuri Miroshnikov in Support of Forex Capital Markets LLC's Opposition to Creative Science Systems, Inc.'s Motion for Sanctions for Failure to Preserve Evidence ("Miroshnikov Decl."), ¶ 7. A document dated August 25, 2004 details steps and tasks required for implementing the new software at FXCM. *Id*., Ex. B.

Palmer has testified that between five and fifteen servers were moved from FXCM's leased space to its office, and that the Linux operating system was reinstalled on these servers, in the time between Palmer's notification of the Preservation Order and EvidentData's investigation. Frewing Decl. ¶ 24, Ex. 9 pp. 318-22. On September 9, 2004, Palmer moved or

4

arranged to have moved twenty-two Linux servers from the Main Data Center to FXCM's office. Declaration of Brandon Palmer in Support of Forex Capital Markets LLC's Opposition to Creative Science Systems, Inc.'s Motion for Sanctions for Failure to Preserve Evidence ("Palmer Decl."), ¶ 5. Palmer has stated that it is standard practice at FXCM to rotate servers through different functions and to reinstall operating systems on the servers prior to installing new software applications. *Id*., ¶ 3. On September 10. 2004, Palmer and his team reinstalled the operating systems on the ten servers, labeled Nylmw1-10. *Id*., ¶ 6. Palmer has declared that none of these servers had been running NetZyme previously and that he was not aware of the instant litigation or the Perseveration Order at this time. *Id*. Palmer received the Preservation Order on Sunday September 12, 2004. *Id*. On September 14, 2004,[4] Alexander e-mailed Palmer and others to inform them that five additional servers were needed for testing. *Id*., ¶ 8, Ex. D. On the same date, Palmer and his team reinstalled operating systems on these servers, Nylmw11-15, which Palmer has stated had not been running NetZyme. *Id*., ¶¶ 8-9.

On September 20, 2004, EvidentData, Inc. ("EvidentData"), a computer forensic firm hired by CSS's counsel, inspected and imaged (made copies of) forty FXCM computers, including computer servers, at FXCM's New York City office and its Main Data Center, located in leased space elsewhere in New York. Declaration of Peter Garza in Support of Creative Science's Motion for Sanctions for Failure to Preserve Evidence ("Garza Decl."), ¶¶ 2, 4. EvidentData inspected five of these forty computers, and discovered that the operating systems on three of these computers had been reinstalled very recently – reinstallation on two on September 10, 2004, and reinstallation on the third on September 14, 2004. *Id*. ¶ 5. Frewing has stated that "[b]ecause FXCM's destruction of evidence made it substantially more expensive to review each computer, and made it less likely that complete evidence would be identified, I directed EvidentData to not pursue further forensic reviews of the FXCM computers pending completion of additional discovery and the Court's ruling on Creative Science's motion for

---

[4] Palmer states in his declaration that the e-mail was sent on September 13, 2004. Palmer Decl., ¶ 8. However, the e-mail is time-stamped at 12:42 am on September 14, 2004. *Id.*, Ex. D.

sanctions." Frewing Decl. ¶ 39. Accordingly, CSS offers evidence of the installation of NetZyme only with respect to five of these forty servers. EvidentData found hits for "Netzyme" on three of these servers,[5] and hits for "Creative Science Systems" on two of these three servers.[6] Garza Decl., ¶¶ 5, 9. The operating systems of two of the servers with remnant evidence of the installation of NetZyme were reinstalled at the time of or after the issuance of the Preservation Order. *Id*.

FXCM contends that reinstallation of operating systems did not violate the Preservation Order. The relevant portion of the order provides:

> Defendant FXCM must allow EvidentData, Inc. . . . to enter Defendant's place of business located at Financial Square, 32 Old Slip, 10th Floor, New York, New York 10005 . . . and FXCM must give EvidentData access to all necessary computer servers or network equipment . . . .
> EvidentData shall limit its inspection of Defendant's computer network to copying the configuration file of any load balancing servers and running a utility program that generates a specific digital signature (a "MD5 hash value") for each file on the FXCM computer servers to generate a file listing along with each file's corresponding MD5 hash value. EvidentData will retain these results in a computer text file. EvidentData shall be permitted to compare the MD5 hash values for the files on the FXCM servers with the MD5 hash values for file unique to the NetZyme software. If EvidentData identifies files unique to the NetZyme software, EvidentData shall make a forensic image or logical backup of the file, at the discretion of the EvidentData computer forensic examiner on site.

FXCM also points out that the MD5 hash, referred to in the Preservation Order, identifies only the presence of active files, not deleted or destroyed files. Supplemental Declaration of Jonah Mitchell in Support of Forex Capital Markets LLC's Opposition to Creative Science Systems, Inc.'s Motion for Sanctions for Failure to Preserve Evidence ("Mitchell Decl."), Ex. A, p. 18.

Additionally, FXCM argues that CSS's investigation on September 20, 2004 was broader than permitted by the Preservation Order because it included servers not located at the 32 Old Slip office and involved *copying*, as opposed to simply testing, each server. Frewing noted in a memorandum dated September 21, 2004 that this and other disputes about the scope of the

---

[5] The three servers are: NYLMW01-0579 (operating system reinstalled on September 10, 2004), NYLMW02-0570 (operating system reinstalled on June 18, 2004), NYLMW13-0575 (operating system reinstalled on September 14, 2004). Garza Decl., ¶¶ 5, 9.

[6] The two servers are: NYLMW02-0570 and NYLMW13-0575. Garza Decl., ¶ 9.

6

Preservation Order had been discussed at the time of the investigation, and that Frewing was willing to seek an expanded order from the Court. Frewing Decl., Ex. 6, p. 3.

CSS argues that FXCM did not preserve the configuration file of the FXCM load balancing servers, citing the evidence that FXCM reinstalled the Linux operating system on fifteen servers. FXCM responds that it offered evidence of the configuration file to EvidentData, but that EvidentData did not focus on this evidence during its investigation. Mitchell Decl., Ex. A, pp. 74-76.

The instant motion includes a table described as summarizing FXCM's servers and admissions related to these servers. However, CSS does not direct the Court's attention to specific evidence supporting each conclusion presented in this chart. CSS argues that the table shows that "FXCM belatedly admitted installing NetZyme on 38 computers, while denying it installed NetZyme on 45 additional computers that bear names and sequential numbers that, at a minimum, *suggest* FXCM also installed NetZyme upon them." Motion for Sanctions, p. 12 (emphasis added). CSS supports this contention with evidence that NetZyme was installed on two servers upon which the operating system had been reinstalled on September 10, 2004 and September 14, 2004 and Alexander's recollection that, in April, 2004, "FXCM had approximately 33 computers on the QA and Staging network segments on which FXCM had installed Netzyme." Alexander Decl., ¶ 22.[7]

Palmer has testified that his conclusions with respect to whether NetZyme had been installed on particular servers were based solely on whether there were FXCM e-mails indicating such installations. Frewing Decl., Ex. 13, pp. 106-107. CSS argues that it should not be required to rely exclusively on e-mail evidence of these installations.

CSS also contends that FXCM has withheld the production of an important notebook in

---

[7] FXCM "generally objects to Paragraphs 13-30 of the Alexander Declaration on the grounds that the statements therein are irrelevant to the issues raised by CSS' Motion for Sanctions." Because CSS seeks an evidentiary sanction instructing the jury to infer that NetZyme was installed on forty-five additional servers, evidence with respect to the number of servers upon which NetZyme was installed is relevant to the instant motion. Accordingly, FXCM's objection to paragraph 22 of the Alexander declaration is overruled.

1  violation of the Preservation Order. On October 28, 2004, counsel for CSS deposed Sasha
2  Alexander ("Alexander), FXCM's Vice President of Production. Frewing Decl. ¶ 28, Ex. 19;
3  Declaration of Sasha Alexander ("Alexander Decl."). Alexander brought with him to the
4  deposition a notebook, in which he kept notes of his daily activities, which might have included
5  detailed notes about FXCM's middleware servers. Frewing Decl. Ex. 19, pp. 59-60. Upon the
6  objection of FXCM's counsel, CSS was prevented from accessing the notebook and Alexander
7  did not consult the notebook. *Id*. pp. 60-67. On March 28, 2005, CSS served document requests
8  on FXCM, including a request for Alexander's notebook. *Id*. ¶ 29, Ex. 20 p. 7. Frewing has
9  stated that FXCM's counsel "informed [him] that FXCM does not possess the notebook and that
10 FXCM believed that Mr. Alexander retained the notebook." *Id*. ¶ 29. Alexander has stated that
11 he gave his notebook to FXCM's counsel on the date of his deposition. Alexander Decl. ¶ 33.
12 Charles von Simpson ("von Simpson"), counsel for FXCM, has stated, however, that Alexander
13 has never given his notebook to von Simpson. Declaration of Charles von Simpson in Support of
14 Forex Capital Markets LLC's Opposition to Creative Science Systems, Inc.'s Motion for
15 Sanctions for Failure to Preserve Evidence, ¶ 2.

## II. DISCUSSION

18     District courts may impose sanctions as part of their inherent power "for willful
19 disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting
20 *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 420, 258 (1975)). In the Ninth
21 Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits
22 of the case, and further, that such evidence was adverse to the party that destroyed it. *Phoceene
23 Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) (discussing
24 *Hammond Packing Co. v. Ark.*, 212 U.S. 322, 349-54 (1909)); *Nat'l Ass'n of Radiation Survivors
25 v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another
26 the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable
27 inferences in favor of the aggrieved party"); *Computer Assoc. Intern., Inc. v. American
28 Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990). Additionally, "[t]he obligation to retain

discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *National Ass'n of Radiation Survivors*, 115 F.R.D. at 557-58.

Because of their potency, these inherent powers must be exercised with restraint and discretion. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). A primary aspect of that restraint and discretion is fashioning a sanction appropriate to the conduct in question. *Id*. at 765. When choosing among possible sanctions, the Court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore a prejudiced party to the same position he or she would have been in absent wrongful destruction of evidence by the opposing party. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). In evaluating the propriety of sanctions, the Court may consider all incidents of prior misconduct, including prior misconduct that already has been subject to sanction. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993).

Having carefully considered the evidence presented, the Court concludes that there is insufficient evidence to merit imposing the particular non-monetary sanctions requested by CSS. While it is possible to conclude from the evidence that FXCM's reinstallation of operating systems on certain servers was done in willful disregard of the Preservation Order, it is not clear that this is the only conclusion that could or should be reached. FXCM has provided evidence supporting the alternative explanation that its actions were motivated by the need to test and install new middleware.

The evidentiary sanctions requested by CSS would not restore CSS to the position that it would have been in prior to the alleged destruction of evidence. CSS requests that the Court instruct the jury that "it should (i) infer that FXCM installed the software program NetZyme on 45 additional computers, because FXCM reinstalled operating systems upon some or all of those

computers after the Court's September 10, 2005 Order Preserving Evidence and Shortening Time for Discovery." FXCM appropriately describes this evidentiary presumption as a potential "windfall" for CSS. Based on detailed evidence with respect to only five servers, CSS would require the jury to reach a conclusion about forty additional servers. Considering the extremely prejudicial impact that this sanction would have on FXCM, the Court concludes that this requested evidentiary presumption is not justified.

CSS seeks a second non-monetary sanction, requesting that the Court bar FXCM from presenting its "production" defense *or* instruct the jury to "infer that FXCM's computers onto which it had installed NetZyme were used to support FXCM customers." CSS's argument that the Court should bar FXCM's production defense is based in substantial part on its contention that this defense is not consistent with the terms of the software license agreement. Because this is an argument about the proper interpretation of the contract, it is not directly relevant to the issue of alleged non-compliance with the Preservation Order. While the reinstallation of the Linux operating system on FXCM's servers may have some impact on evidence available to CSS, this does not support the Court issuing a sanction that would bar FXCM's use of the production defense. Similarly, the requested sanction instructing the jury to infer that servers, including "the 38 on which FXCM has admitted installing NetZyme and the 45 additional computers on which it appears FXCM installed NetZyme," were used to support NetZyme customers is not justified.

However, while the record does not contain convincing evidence that the reinstallations were motivated by bad faith, the Court does conclude the failure of FXCM and its counsel to take affirmative steps to comply with the Preservation Order—which would have caused FXCM not to reinstall the operating systems on the servers at issue—is evidence of at least some degree of bad faith. As it indicated during oral argument, the Court concludes that the appropriate resolution of the instant request for sanctions is that FXCM be required to bear the cost of analyzing those servers that have been copied but not yet analyzed. This will serve the dual purposes of sanctioning FXCM for its noncompliance with the Preservation Order and producing more precise information about the installation of NetZyme. The parties' experts, counsel, or

other representatives shall meet and confer in order to establish a list of servers that will be analyzed. As counsel indicated during oral argument, because FXCM has admitted the installation of NetZyme on some of the servers, it may not be necessary to analyze all of the remaining servers. Any dispute between the parties with respect to which servers will be analyzed shall be resolved by Magistrate Judge Richard Seeborg. FXCM shall bear the cost of analyzing the servers. However, if the evidence obtained from this analysis shows that FXCM's non-compliance with the Preservation Order was limited, this Court would consider a request by FXCM to reallocate the costs between the parties.

     Additionally, the Court agrees with CSS that FXCM violated its duty to preserve the Alexander notebook. While it is possible that Alexander did not give the notebook to FXCM or FXCM's counsel, it is undisputed that FXCM failed to preserve the notebook. Because FXCM was on notice of the Preservation Order, the alleged contents and significance of the notebook, and CSS's request for the notebook, this Court concludes that FXCM's failure to preserve the notebook was willful. Thus, the Court will impose a monetary sanction for this violation. It is impossible to determine precisely the monetary loss associated with the failure to preserve the notebook, and CSS has not made a separate monetary request for this particular violation of the Preservation Order. Accordingly, the Court will make its own estimation, based on the available information, of an appropriate monetary sanction. The Court concludes that a sanction in the amount of $12,175 will fairly compensate CSS for FXCM's failure to preserve the notebook. The Court derived this amount by adding $4,075 (one quarter of the costs incurred by CSS related to the instant motion for sanctions) and $8,100 (the cost of reviewing the hundreds of FXCM e-mails for evidence of NetZyme installation, which could have been reduced significantly or obviated entirely if the notebook included detailed records of such installation).

### III. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the instant motion for sanctions will be GRANTED IN PART and DENIED IN PART, as discussed in detail above.

DATED: April 4, 2006

_____
JEREMY FOGEL
United States District Judge

1 | This Order has been served upon the following persons:

2 | John P. Bovich — jbovich@reedsmith.com, edorrington@reedsmith.com

3 | Robert T. Cruzen — rcruzen@howardrice.com,

4 | Scott H. Frewing — scott.h.frewing@bakernet.com, diane.e.pierson@bakernet.com; renata.thorgersen@bakernet.com; fsay@bakernet.com

5

6 | Tod L. Gamlen — tod.l.gamlen@bakernet.com, frances.m.say@bakernet.com; renata.m.thorgersen@bakernet.com

7 | Martin R. Glick — mglick@howardrice.com,

8 | Jonah D. Mitchell — jmitchell@reedsmith.com, Drothschild@reedsmith.com

9 | William R. Overend — woverend@reedsmith.com, nctuttle@reedsmith.com

10 | Maxim H. Waldbaum — mwaldbaum@schiffhardin.com, jsanchez@schiffhardin.com

11 | Keith L. Wurster — keith.l.wurster@bakernet.com, robin.m.robledo@bakernet.com

12 | Steven M. Bocknek
Schiff Hardin, LLP
13 | 623 Fifth Avenue
28th Floor
14 | New York, NY 10022

15 | Eugene LeDonne & Charles von Simon
Reed Smith LLP
16 | 599 Lexington Avenue
New York, NY 10022

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 04-03746 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS
(JFLC1)